[No. 21484. Department One. May 1, 1929.]

MARGARET RAE, *as Administratrix, Respondent,* v.
MILLARD T. NELSON *et al., Appellants.*[1]

[1]Reported in 277 Pac. 75.

*Bates & Peterson,* for appellants.

*Wesley Lloyd* and *C. D. Cunningham,* for respondent.

BEALS, J.—Plaintiff, as administratrix of the estate of her deceased husband, George Rae, junior, seeks damages from the defendants for the use and benefit of herself, as widow, and George Paul Rae, her minor son.

The following facts are undisputed: That plaintiff is the widow, and George Paul Rae, four years of age, the minor son, of George Rae, junior, deceased, and that plaintiff is the administratrix of the estate of her deceased husband. That the defendant Millard T. Nelson is a regularly licensed physician and surgeon, and that the defendant St. Helens Clinic, Inc., is a Washington corporation, maintaining a clinic and hospital in the city of Tacoma. That March 14, 1927, plaintiff's intestate, who was then thirty-eight years of age, was suffering from a carbuncle on his back and, being unable to procure the services of Doctor J. L. Courtwright, his family physician, went to the hospital maintained by the defendant St. Helens Clinic, Inc., for treatment. That the defendant Doctor Millard T. Nelson lanced the carbuncle, placed a dressing thereon, gave Mr. Rae certain instructions concerning dressings to be applied to the wound and told him to call Doctor Courtwright upon the latter's return to the city. That Doctor Courtwright visited Mr. Rae on the following day and treated the wound on his back. That April 3, following, Mr. Rae being manifestly very ill and Doctor Courtwright being again absent from the city, Doctor McNerthney was called to attend Mr. Rae, and visited him. That, the next day, Doctor Courtwright, who was again available, performed a blood transfusion,

but that the same was unavailing and that Mr. Rae died April 7.

It is plaintiff's contention that Doctor Nelson, at the time he lanced the carbuncle, severed an artery and negligently failed to tie the same, and that, by reason of this, Mr. Rae lost much blood and was so greatly weakened that his death resulted. Defendants denied all negligence, carelessness or unskillful treatment on the part of Doctor Nelson or the agents of defendant St. Helens Clinic, or that Doctor Nelson cut any artery at the time he lanced the carbuncle, and denied any liability to plaintiff. The trial of the action before a jury resulted in a verdict in plaintiff's favor, and from a judgment entered upon this verdict, defendants appeal.

Appellants assign error upon the refusal of the trial court to instruct the jury to return a verdict in their favor, and upon the denial of appellants' motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Certain assignments of error are also based upon the rejection and admission of testimony, upon the giving of certain instructions and upon the refusal of the court to give instructions requested by appellants.

Appellants' contention that the testimony does not justify any verdict against them requires a careful consideration of the evidence. Appellant Nelson testified that Mr. Rae came to the clinic for treatment, complaining of an extremely painful carbuncle on his back; that, at this time, Mr. Rae was suffering from Bright's disease, secondary anemia and dropsy; that he stated that his family physician, Doctor Courtwright, was not available, and that all he desired Doctor Nelson to do was to relieve the pain which the carbuncle was causing him; that Doctor Courtwright would attend him upon the doctor's return. Doctor

Nelson testified that he made a simple crucial incision through the necrotic top of the carbuncle, about one-eighth of an inch, or a little more, in depth; that, after the incision, the wound did not bleed, but merely oozed; that there was no arterial hemorrhage, and that Mr. Rae was instructed to call the clinic if he had any trouble, and to come back in the event that he could not later obtain the services of his family physician; that Doctor Courtwright returned the next day and took charge of the case, and that the services of the clinic were not again requested on Mr. Rae's behalf until about two weeks later.

Doctor E. W. Janes, an employee of appellant clinic, corroborated Doctor Nelson as to what Mr. Rae said concerning his condition, and also testified that it appeared, from an examination made by Doctor Janes, that Mr. Rae was suffering from chronic nephritis, or Bright's disease. It is not disputed that Mr. Rae had been suffering more or less from kidney trouble for two years prior to his death, and that he had been treated for this ailment by a Doctor Mattson, as well as by Doctor Courtwright.

On behalf of respondent, Doctor Courtwright testified that, upon examining the wound on Mr. Rae's back, the day after he had been treated by Doctor Nelson, he discovered that there had been a very small artery severed, and that the blood was spurting therefrom; that he tied the ends of the artery, thereby checking the hemorrhage; that he visited Mr. Rae every day thereafter for the succeeding week; that he told Mr. Rae and the respondent that there was likely to be a second hemorrhage in about ten days. Mrs. Rae testified that on April 3 the second hemorrhage took place; that Doctor Courtwright was then away, and that she telephoned Doctor Whitacre, a physician in the employ of appellant clinic, who refused to visit

Mr. Rae, and that Doctor McNerthney was then called, who treated Mr. Rae until Doctor Courtwright's return. Doctor Courtwright testified that, upon again visiting Mr. Rae, after the second hemorrhage, he gave him a blood transfusion, but that, in spite of this, Mr. Rae died. Doctor Courtwright testified that, in his opinion, Mr. Rae would not have died at the time he did had it not been for the severance of the artery and resulting loss of blood. He also stated that there might have been a secondary hemorrhage from the wound without any primary hemorrhage resulting from the cutting of an artery.

The testimony of Doctors Nelson and Janes as to what was done by Doctor Nelson in operating upon the carbuncle is undisputed, as no persons other than the two doctors and Mr. Rae were present when the carbuncle was lanced. Doctor McNerthney testified that, when he attended Mr. Rae, the patient,

". . . had the earmarks of a man who would probably die within two or three days, which I told his wife he probably would. He was dying from Bright's disease."

Three expert medical witnesses testified on behalf of appellants. They explained fully the nature of a carbuncle, that it is a dangerous infection and that death sometimes results therefrom. They stated that a carbuncle is unusually dangerous when the sufferer is a victim of diabetes or Bright's disease. The experts, replying to hypothetical questions, testified that, in their opinion, Mr. Rae died from chronic nephritis, or Bright's disease, with superimposed or terminal carbuncle infection.

Respondent concedes that the doctrine of *res ipsa loquitur* does not apply to such a case as this, and that, in order to support a verdict against appellants, there must be in the record competent testimony to

the effect that Mr. Rae's death was the result of improper or unskillful treatment by appellants, and that the burden rests upon respondent to show negligence. It is also true, as stated by this court, in the case of *Coombs v. James,* 82 Wash. 403, 144 Pac. 536, that a jury should not be permitted to speculate between several suggested causes as to what particular act was the proximate cause of the injury complained of. Respondent does not contend that Doctor Nelson's treatment was improper, in so far as the method he followed was concerned or in any particular, save that respondent contends that, in lancing the carbuncle, Doctor Nelson severed a small artery and neglected to tie the ends thereof so as to prevent hemorrhage. Doctor Courtwright testified that, when he visited Mr. Rae the day after the operation, the tiny artery was severed and bleeding, that the artery was healthy and the ends appeared to have been cut. Mrs. Rae testified that, from the time her husband left the clinic until Doctor Courtwright attended him the next day, blood was continually flowing from the wound.

Appellants earnestly contend that, because Doctors Nelson and Janes testified positively that appellant Nelson, in operating on the carbuncle, did not sever an artery, the jury cannot disregard their testimony, the same not being directly contradicted. Testimony such as that of Doctors Nelson and Janes may, however, be contradicted by testimony as to actual conditions, and upon the question of what happened at the time of the lancing of the carbuncle, we are convinced that there is, in the record, testimony on behalf of the respondent sufficient, if believed by the jury, to support a verdict in respondent's favor. There is testimony that, after a carbuncle is lanced, under normal conditions, not a great deal of blood flows from the wound, that, in Mr. Rae's case, the bleeding was pro-

fuse; that the next day Doctor Courtwright found the artery cut, all of which testimony the jury had a right to consider in connection with that of appellants' witnesses.

Appellants rely upon the rule that, as to whether or not the treatment of the patient by a physician or surgeon was correct, courts must be governed by the evidence of skilled physicians and surgeons, and that, if, among such experts, there is a difference of opinion on this question, there can be no recovery for malpractice. *Dahl v. Wagner,* 87 Wash. 492, 151 Pac. 1079; *Dishman v. Northern Pac. Beneficial Ass'n,* 96 Wash. 182, 164 Pac. 943; *Howatt v. Cartwright,* 128 Wash. 343, 222 Pac. 496. The law is as stated by appellants, but the same does not apply to the case now before us. The question here is not as to whether defendant Nelson lanced the carbuncle skillfully, but is as to whether or not, in so doing, he severed a small artery and neglected to tie the ends thereof so as to prevent excessive bleeding. It is not contended that the doctor was guilty of negligence in severing the artery, but only in not tying the ends after the same had been severed. This state of facts distinguishes this case from the authorities relied upon by appellants. *Howatt v. Cartwright, supra.*

We are satisfied that testimony was introduced on behalf of respondent sufficient to take the case to the jury and, if believed by the jury, to support a verdict in respondent's favor.

Appellants contend that the trial court erred in sustaining objections to certain questions propounded upon cross-examination by appellants' counsel to appellant Nelson, who was called by respondent as an adverse witness. The witness stated that he made a general examination of Mr. Rae, but an objection to a question by appellants' counsel as to Mr. Rae's

general health was sustained, the court stating that in his opinion this line of testimony, if material, was part of appellants' defense. Appellants were later allowed to go into the matter of Mr. Rae's general condition, and we find in this ruling of the court no reversible error.

Respondent, testifying as a witness on her own behalf, stated that, when Mr. Rae suffered the secondary hemorrhage, fifteen days after the lancing of the carbuncle by Doctor Nelson, she called Doctor Whitacre, a physician in the employ of appellant clinic. Doctor Nelson testified that he told respondent to call the clinic if necessity arose and Doctor Courtwright was not available. This was the case when Mr. Rae suffered the secondary hemorrhage. It also appears that Doctor Courtwright had told Mrs. Rae to call Doctor Whitacre in case an emergency should arise during his absence. Mrs. Rae testified that this call resulted in some argument between Doctor Whitacre and herself as to whether or not there had been any artery cut when the carbuncle was lanced. Doctor Whitacre did not respond to the call, and Doctor Mc-Nerthney was subsequently called and attended Mr. Rae. Had no other physician been available, the question as to the responsibility of appellants to Mr. Rae might have been important, but another competent physician was available and was called. We find no reversible error in connection with this testimony.

Doctor Courtwright having testified at length concerning the secondary hemorrhage from the carbuncle, and that a victim of chronic Bright's disease, suffering from a carbuncle, was necessarily in a bad physical condition, appellants' counsel then propounded this question to the witness:

"And if that man died, do you think it is just fair to say that his death was caused by hemorrhage, se-

18

condary hemorrhage? That disease in itself might have killed him?"

To this question, respondent interposed an objection, which was sustained. The question is in form argumentative and improper, and whether or not it was, under the circumstances, "just fair" to state that Mr. Rae's death was caused by hemorrhage, cannot be said to have been material. A statement as to the probable cause of death was either reasonable in view of all the evidence, or it was not; the question of fairness or unfairness was not involved. But, waiving this technical objection to the question and considering the entire cross-examination of the witness, we find no error in the ruling of the court complained of.

Appellants requested the court to give certain instructions which the court refused to give, to which refusal appellants excepted. Appellants also assign error upon the giving of certain instructions by the court, to which instructions they also took proper exception. A careful reading of the instructions given convinces us that the court properly instructed the jury concerning the issues of fact which the jury was to determine. Appellants asked several instructions along the lines of their theories of the case; the substance of these requested instructions was embodied in the instructions given by the court, which adequately covered all the issues.

We are satisfied that the case was properly submitted to the jury, and that the judgment entered upon the verdict should be affirmed. It is so ordered.

HOLCOMB, FULLERTON, TOLMAN, and MILLARD, JJ., concur.